**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0004373
23-MAR-2015
09:00 AM**

NO. CAAP-13-0004373

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CAROLINE MICHELLE TORTORELLO,
now known as CAROLINE MEYERS, Plaintiff-Appellant,
v.
DAVID LYNN TORTORELLO, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 11-1-1898)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Reifurth, JJ.)

In this post-divorce child-custody proceeding,
Plaintiff-Appellant Caroline Michelle Tortorello nka Caroline
Myers ("Mother") appeals from (1) the September 24, 2013 Order
re: Trial/Extended Hearing ("Order"), which granted a motion for
post-decree relief filed by Defendant-Appellee David Lynn
Tortorello ("Father"), and (2) the August 27, 2013 Order Denying
Plaintiff's Motion for New Trial Filed July 31, 2013. Both
orders were entered in the Family Court of the First Circuit
("Family Court").[1] We affirm.

I.    BACKGROUND

Mother and Father have two children together—a daughter
("Daughter") and a son (collectively, the "Tortorello Children").
Mother filed for divorce (thereby initiating the "Divorce Case"),

---

[1]    The Honorable William J. Nagle presided.

and on January 26, 2012, the Family Court entered a Decree Granting Absolute Divorce and Awarding Child Custody ("Divorce Decree"). The Divorce Decree awarded Mother sole physical custody of the Tortorello Children, subject to Father's rights of reasonable visitation, and ordered Father to pay child support.

Mother subsequently married Stepfather, whose two children from a previous marriage ("Stepchildren") also lived with them. Father also subsequently married SH who had physical custody of two children from her previous marriage.

On August 9, 2012, the State of Hawai'i, Department of Human Services ("DHS") received a report of possible child abuse involving Mother and Stepfather's treatment of Daughter, based on observations made at the Hickam Air Force Base Child Development Center and Tripler Army Medical Center. The Tortorello Children moved in with Father the same day.[2] Mother subsequently provided Father with a notarized document allowing him to be the temporary guardian and legal caregiver of the Tortorello Children.

On September 4, 2012, DHS filed a Child Welfare Services Petition for Family Supervision ("Petition") with the family court ("CWS Court")[3] in connection with the Tortorello Children (thereby initiating the "CWS Case"). DHS filed a similar petition in connection with the Stepchildren, who were placed in foster custody thereafter.

A hearing regarding the CWS Case was held on January 7, 2013. At the outset, Mother and Father "knowingly and voluntarily stipulated to jurisdiction, adjudication of the [P]etition, foster custody, and the service plan dated 8-31-12." The CWS Court entered Orders Concerning Child Protective Act, in which it stated that "DHS agrees that the bruises on [Daughter']s buttocks [were] due to a spanking by [Mother,] which she has

---

[2] Hawaii Revised Statutes ("HRS") § 587A-9 provides that "[w]hen [DHS] receives protective custody of a child from the police, the department shall . . . [a]ssume temporary foster custody of the child if, in the discretion of the department, the department determines that the child is subject to imminent harm while in the custody of the child's family[.]" Haw. Rev. Stat. § 587A-9(a)(1) (Supp. 2010).

[3] The Honorable Lanson Kupau presided.

admitted . . . may have been excessive . . . . [Mother] agrees there is a basis for jurisdiction. [Mother's] position [is that] it was for disciplinary reasons." DHS was awarded foster custody over the Tortorello Children. Subsequently, the CWS Court awarded temporary physical custody of the children to Father, revoked foster custody, and terminated jurisdiction. A separate order confirming the custody arrangement was filed that same day in the Divorce Case.

Meanwhile, in the Divorce Case, Father had filed Defendant's Motion and Declaration for Post Decree Relief ("Motion for Post-Decree Relief") on November 8, 2012, asking that he be awarded sole physical and legal custody of the Tortorello Children and that he receive child support. The Family Court heard the Motion for Post-Decree Relief on May 31, 2013 and June 7, 2013. Testifying witnesses included Father, SH, Mother, Stepfather, and Dr. Gregory K. Yim, a pediatric physician testifying as an expert on child medical health and identification and/or treatment of child abuse and neglect.

The Family Court made several initial oral findings summarizing the CWS Case's procedural history, concluding that there was no material change in circumstances to support the Motion for Post-Decree Relief, and opining that any physical custody award to either Mother or Father would be consistent with the Tortorello Children's best interests. Specifically, the Family Court stated:

> [A]t some point DHS, after filing the petition for family supervision, *concluded that [Stepfather and Mother] could provide a safe family home for the children who resided there*, not only [the Tortorello Children] but also [the Stepchildren] and returned [the Stepchildren] to the residence, . . . and closed the case awarding Mr. Tortorello temporary physical custody of [the Tortorello Children]. The court notes that the Department of Human Services did not adjudicate the allegations in the petition and the allegations in the petition remain unproved.
>
> . . . .
>
> [T]he movant is required to show for a change of physical and legal custody that there has been a material change in circumstances. As the court has noted, the allegations in the motion refer to DHS's petition which was closed without findings. And, . . . as a practical matter, . . . *there has been no evidence of abuse for which the court can find a material change in circumstances.*

> [A]ddressing the issue of whether . . . a change in
> custody is . . . in the best interest of the children, the
> court would simply note that both families in this case
> obviously love the children. . . . [A]nd very frankly the
> court is -- the court simply notes that these children have
> been blessed by the number of people who love them, care for
> them, and . . . with either set of parents the children will
> do fine.

(Emphases added.)  On the basis of those findings, the Family
Court denied the Motion for Post-Decree Relief.

Father's attorney objected to the Family Court's
statements that DHS neither adjudicated nor proved the
allegations in the Petition before closing the CWS Case.  He
pointed to findings in the Orders Concerning Child Protective Act
in the CWS Case, which stated that Mother and Father had
knowingly and voluntarily stipulated to jurisdiction and
adjudication of the Petition, and acknowledged Mother's admission
that she had used excessive force in spanking Daughter.  In
response, Mother's attorney claimed that Mother and Father had
stipulated only to the family court's jurisdiction over the
matter, but that the actual adjudication did not occur because
the stipulation was on the eve of trial, and DHS chose to close
the case instead of having trial.  Unconvinced, the Family Court
sided with Father and announced that its initial oral finding was
made in error, and called a recess to further consider the issue.

Returning from recess, the Family Court modified its
initial ruling, noting that it had erred "in saying that there
was no adjudication because clearly the order concerning the
Child Protective Act does reflect that [Stepfather[4] and Mother]
stipulated to adjudication and they stipulated to . . . the
jurisdiction of the [CWS] Court."  The Family Court, however,
also found that DHS could not have terminated jurisdiction and
subsequently returned Stepchildren to the home without finding
that Mother and Stepfather could provide a safe family home.  As
such, the Family Court reinstated its earlier finding that there
had not been a material change in circumstances and re-awarded
sole physical custody of the Tortorello Children to Mother.

---

[4]     We assume that the Family Court's reference to Stepfather was
inadvertent.

On June 18, 2013, and before any written order could issue regarding the Motion for Post-Decree Relief, Father filed a motion for reconsideration of the June 7, 2013 oral ruling under Hawaiʻi Family Court Rules ("HFCR") Rule 59(e). In the declaration attached to the motion, Father's attorney argued that there had been a material change in circumstances, both because Father was moving away from Hawaiʻi and because Mother had been "charged with child abuse and had stipulated to jurisdiction and adjudication of the [P]etition filed by the DHS[.]" As such, the declaration contended that the custody dispute is governed by HRS § 571-46 which specifically states that:

> a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence.

Haw. Rev. Stat. § 571-46(a)(9) (2006) ("Rebuttable Presumption").

On July 22, 2013, the Family Court issued a minute order granting Father's motion for reconsideration because Mother had failed to overcome the Rebuttable Presumption. Accordingly, Father was awarded sole legal and physical custody of the Tortorello Children, subject to Mother's visitation rights. Consistent with the July 22, 2013 ruling, the Family Court entered an order granting the motion for reconsideration on August 27, 2013, and subsequently issued the September 24, 2013 Order, which forms now the basis for this timely appeal.

The Family Court entered its Findings of Fact and Conclusions of Law and Order ("FOF/COL") on December 23, 2013, determining that the Rebuttable Presumption applied because Mother had committed acts of "family violence" against Daughter, and that Mother had failed to rebut the presumption. Specifically, the court found that Mother's act of spanking Daughter so excessively as to cause bruising constituted "family violence" under HRS § 571-2. This disposition follows.

II. POINTS OF ERROR

Mother contends that the Family Court abused its discretion by (A) granting Father's motion for reconsideration

because Father presented no new evidence or argument that could not have been raised at the hearing; and (B) modifying child custody in accordance with Father's Motion for Post-Decree Relief because (1) Father failed to establish a material change in circumstances, (2) the Family Court violated Mother's constitutional rights, (3) the Rebuttable Presumption did not apply since there was no determination of family violence, and (4) if it did apply, Mother had successfully rebutted the presumption.

III. STANDARDS OF REVIEW

Constitutional Questions - Civil

The appellate court "answer[s] questions of constitutional law by exercising [its] own independent judgment based on the facts of the case. Thus, [the appellate court] review[s] questions of constitutional law under the 'right/wrong' standard." *Cnty. of Kauai v. Baptiste*, 115 Hawai'i 15, 25, 165 P.3d 916, 926 (2007) (quoting *City & Cnty. of Honolulu v. Sherman*, 110 Hawai'i 39, 49, 129 P.3d 542, 552 (2006)) (internal quotation marks omitted).

Family Court Rulings

Generally, we review a family court's ruling on a motion for post-decree relief, or a motion for reconsideration, for an abuse of discretion. *See Lowther v. Lowther*, 99 Hawai'i 569, 577, 57 P.3d 494, 502 (App. 2002). We afford the family court much discretion:

> The family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Under the abuse of discretion standard of review, the family court's decision will not be disturbed unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*In re Doe*, 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994) (citations, internal quotation marks, brackets, and ellipsis omitted).

Findings of Fact/Conclusions of Law

Findings of fact are reviewed on appeal under the clearly erroneous standard. *In re Doe*, 101 Hawai'i 220, 227, 65

P.3d 167, 174 (2003). On the other hand, appellate courts review conclusions of law de novo under the right/wrong standard. *Id.* However, a conclusion of law that "presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." *Estate of Klink ex rel. Klink v. State*, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007).

    Motion for Reconsideration

> "The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard." *Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co.*, 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) (citation omitted). An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (citation omitted).

*Cho v. State*, 115 Hawai'i 373, 381, 168 P.3d 17, 25 (2007).

IV. DISCUSSION

    A.    Motion for Reconsideration

        Mother argues that the Family Court abused its discretion in granting Father's motion for reconsideration because Father presented no new evidence or argument that could not have been raised at the hearing. And, indeed, it is well established that "[t]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 27 (1992). Ordinarily, in accordance with Mother's arguments, then, "[a] motion for reconsideration is not [the] time to relitigate old matters." *Id.* (quoting *Briggs v. Hotel Corp. of the Pac.*, 73 Haw. 276, 287 n.7, 831 P.2d 1335, 1342 n.7 (1992)) (original brackets omitted). However, these general principles do not apply here.

        Instead, we agree with Father, who contends that the Family Court had authority to alter its initial oral ruling on a motion for reconsideration where the court has an objective basis to do so. Father's motion for reconsideration relates to an

interlocutory oral ruling, so the standards ordinarily applicable to an HFCR Rule 59 motion for reconsideration of a final order or judgment do not apply.[5/]

Instead, a trial court "has inherent power to reconsider interlocutory orders." *Cho v. State*, 115 Hawai'i 373, 383, 168 P.3d 17, 27 (2007). And "[i]f a court determines that it made a mistake in [its own earlier] oral ruling, upon review of persuasive legal authorities, it is not an abuse of discretion for [that] court to reconsider its decision." *Ass'n of Home Owners of Kai Nui Court v. City & Cnty. of Honolulu*, 118 Hawai'i 119, 123, 185 P.3d 867, 871 (App. 2008). Therefore, we do not disturb the Family Court's response to Father's motion for reconsideration and Mother's first point of error fails.

B.    Motion for Post-Decree Relief

   1.    The Family Court did not err in concluding that
         there was a material change of circumstances.

Mother alleges that Father did not establish that there was a "material change in circumstances" to support his Motion for Post-Decree Relief to modify the Tortorello Children's custody arrangement.[6/] We disagree with Mother.

"Whether a substantial and material change has been presented is reviewed under the right/wrong standard." *Hollaway v. Hollaway*, 133 Hawai'i 415, 421, 329 P.3d 320, 326 (App. 2014) (citing *Davis v. Davis*, 3 Haw. App. 501, 506, 653 P.2d 1167, 1171 (1982)). Since the initial custody determination was made in the

---

[5/]    Even if we were to consider the motion for reconsideration as if it is governed by HFCR Rule 59(e), we could not conclude that the Family Court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment" of Mother when the court reconsidered its initial oral ruling. *Cho v. State*, 115 Hawai'i 373, 381, 168 P.3d 17, 25 (2007). For the reconsideration standards are "not intended . . . to inflexibly bind the hands of a judge who determines that he or she has made an error." *Ass'n of Home Owners of Kai Nui Court v. City & Cnty. of Honolulu*, 118 Hawai'i 119, 121, 185 P.3d 867, 869 (App. 2008). To disturb the sound discretion of the Family Court would be particularly unwarranted in this case because the order in question was an oral order, making reconsideration of questions of law less objectionable. *Id.* at 122-23, 185 P.3d at 870-71.

[6/]    We understand Father and Mother to be arguing about whether Father demonstrated changed circumstances from the custody awarded in the Divorce Decree (and not from the "temporary" custody awarded as a result of the Petition filed in the CWS Case).

Divorce Decree: (1) DHS filed the Petition; (2) Mother stipulated to the jurisdiction of the CWS Court over the Petition and a Family Service Plan was filed; (3) the Tortorello Children were transferred to the temporary physical custody of Father and had been living with him for almost ten months by the time the Motion for Post-Decree Relief was heard; and (4) Father had been reassigned to a new duty station on the mainland. Moreover, at the time that the temporary award of custody was entered, it appears that the CWS Court expected that the custody issue would be reconsidered in the Divorce Case. When the Divorce Decree was entered, none of the parties could have anticipated that these events would occur. *Cf. Nadeau v. Nadeau*, 10 Haw. App. 111, 120-21, 861 P.2d 754, 759 (1993) (holding that parents' relocation to the mainland was not a material change in circumstances where the family court had addressed the issue in its initial divorce decree). These events constitute a sufficient material change in circumstances to support the Motion for Post-Decree Relief, so the Family Court did not err in proceeding to consider what custody arrangement was in the best interests of the Tortorello Children under HRS § 571-46.

      2.    The Family Court has not violated Mother's
            constitutional rights.

Mother argues that the Family Court violated her constitutional rights (a) by depriving her of custody of her children where "the CWS Court made no finding of 'family violence,'" and where Father had failed to establish a material change in circumstances warranting the change in custody; (b) by failing to afford her an opportunity to be heard before awarding Father sole physical custody of the children via a motion for reconsideration without holding a new hearing; and (c) by presuming that her acts were "family violence" rather than protected parental discipline.

a.   There were both changed circumstances and explicit findings.

As to the first argument, we reject the contention that Father failed to establish a material change in circumstances for the reasons explained above.  Furthermore, even if we accept it as fact that the CWS Court made no explicit finding of "family violence," it is of no independent significance if the Family Court made the same finding or reached the same conclusion in the Divorce Case.

b.   Regardless of whether she argued the merits of a statutory presumption before the Family Court applied it, Mother was accorded sufficient process to do so.

As to the second argument, the Family Court did not violate Mother's constitutional rights when it granted Father's motions without holding an additional hearing.  The law says that parents are entitled to certain procedural due process protections, including notice and an opportunity for an appropriate hearing, in proceedings that involve protected liberty interests, such as the parental interest in controlling the upbringing of one's own child.  *Doe v. Doe*, 120 Hawai'i 149, 169, 202 P.3d 610, 630 (App. 2009) ("[D]ue process generally requires that notice and an opportunity for an appropriate hearing be afforded *before* deprivation of the protected liberty interest . . . .").  Here, however, Mother has enjoyed procedural protections significantly greater than the litigants in other Hawai'i cases finding that a due process-based entitlement to a hearing has been impermissibly withheld.  *See, e.g.*, id.; *Medeiros v. Medeiros*, No. CAAP-13-0002023, 2014 WL 2007513, at *7 (Haw. Ct. App. May 14, 2014) (holding that father's parental rights were substantially affected when the family court did not allow him to testify or cross-examine mother regarding her alleged treatment of their child).  Significantly, the Family Court held a two-day evidentiary hearing on the custody issue, which Mother attended; furthermore, Mother filed a written opposition to Father's motion for reconsideration.

Indeed, procedural due process, at its core, requires notice and opportunity to be heard. *State v. Bani*, 97 Hawai'i 285, 293, 36 P.3d 1255, 1263 (2001). And, in this case, Mother received both. Therefore, although the issue of the Rebuttable Presumption was not raised until Father filed his motion for reconsideration, the timing of the argument provides no basis—due to constitutionally-protected liberty interests or otherwise—on which to require a further hearing. That is, the party's failure to specifically address a particular statutory provision despite the opportunity to do so in opposition filings, for instance, does not require the court to hold an additional hearing before it may apply the provision. Consequently, we conclude that Mother had no, and the Family Court did not violate any, constitutional right to another hearing before the Family Court could apply the Rebuttable Presumption.

    c.    The Family Court's findings sufficiently negate Mother's attempted parental-discipline defense and support its determination that "family violence" occurred.

As to the third argument, the Family Court justified its application of the Rebuttable Presumption with its earlier finding that Mother had committed "family violence." Specifically, in FOF 38, the court found that Mother "acknowledged that the spanking admistered to [Daughter] was excessive," in FOF 41, it found that "[t]he actions of [Mother] in spanking [Daughter] excessively and causing bruising constituted 'family violence' as that term is defined in HRS § 571-2," and, in COL 3, it explicitly concluded that "[Mother] has committed acts of 'family violence' to [Daughter] by causing harm to [Daughter] and/or placing [Daughter] in fear of physical harm." From this, we conclude that the Family Court made its own finding of "family violence" before applying the Rebuttable Presumption. Accordingly, we need not determine whether Mother's stipulation to jurisdiction in the CWS Case constituted a "determination by the court that family violence has been committed". Haw. Rev. Stat. § 571-46(a)(9).

11

Mother also challenges COL 3 by arguing that her actions toward Daughter constitute "protected parental discipline." However, we conclude that the Family Court's finding that Mother's actions were excessive was sufficient to negate the parental discipline defense. *See, e.g., J.P. v. S.V.B.*, 987 So.2d 975, 981-82 (Miss. 2008) (holding that although trial court "did not specifically refer in writing to all the factors enumerated in [its] judgment," it made "sufficient, specific findings to support [its] conclusion that the [parents] did not provide evidence to rebut the presumption" in a similar statute). Although HRS § 571-2 contains no reference to "parental discipline" as a defense to a court's finding of "family violence,"[7] we addressed this issue in *Rezentes v. Rezentes*, where we held that "family violence" under HRS § 571-2 "would not extend to force used to discipline a child as allowed by HRS § 703-309(1)." 88 Hawai'i 200, 201, 965 P.2d 133, 134 (App. 1998).

The fact that a parent's actions may have been disciplinary in nature does not satisfy the HRS § 703-309(1)[8]

---

[7] "Family violence" is defined as follows:

> "Family violence" means the occurrence of one or more of the following acts by a family or household member, but does not include acts of self-defense:
>
> (1) Attempting to cause or causing physical harm to another family or household member;
>
> (2) Placing a family or household member in fear of physical harm; or
>
> (3) Causing a family or household member to engage involuntarily in sexual activity by force, threat of force, or duress.

Haw. Rev. Stat. § 571-2 (2006).

[8] HRS § 703-309(1) states, in relevant part that:

> The use of force upon or toward the person of another is justifiable under the following circumstances:
>
> (1) The actor is the parent, guardian, or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:

(continued...)

defense if the amount of force used was excessive. The statute requires that the force is "employed *with due regard for the age and size of the minor and is reasonably related* to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct." Haw. Rev. Stat. § 703-309(1) (emphasis added). Here, the Family Court's finding that Mother engaged in family violence by spanking Daughter excessively and causing bruising established that Mother used excessive force and thus served to negate a claim that the force employed by Mother was reasonable with due regard for the age and size of the minor. The Family Court's finding was supported by evidence that Daughter was three years old at the time and by the significant bruising depicted in photographs taken of Daughter's injuries. The Family Court's finding regarding Mother's use of excessive force was sufficient to negate the parental discipline defense, and no additional findings on that defense were necessary.

3. Because the Family Court's "family violence" determination is supported by its findings, the HRS §571-46(a)(9) rebuttable presumption that placement with the perpetrator would be detrimontal to the child applies.

Mother contends that the Family Court erred in applying the Rebuttable Presumption either because, pursuant to her previous argument, there was no determination of family violence, or because she rebutted the presumption.

As to the contention that there was no determination of family violence, insofar as Mother argues that the Family Court

---

8/ (...continued)

(a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and

(b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

Haw. Rev. Stat. § 703-309(1) (1993).

mischaracterized her acts as "family violence" when, she claims, those acts constitute justified parental discipline, we have disagreed above. Furthermore, insofar as Mother argues that the CWS Court failed to find "family violence" and that the Rebuttable Presumption should therefore not apply, we note that Hawai'i law authorizes such an application whenever there is "a determination by the court that family violence has been committed by a parent . . . ." Haw. Rev. Stat. § 571-46(a)(9). Nothing requires that the determination be made by the judge considering the CWS Case. Here, the Family Court's determination in the Divorce Case, explicitly stated in FOF 41, is sufficient. Consequently, a determination of family violence was entered, the finding involved a mixed question of fact and law and was not clearly erroneous, and the Family Court did not abuse its discretion in applying the Rebuttable Presumption accordingly.

As to the contention that the Family Court erred in determining that Mother failed to rebut the presumption, we disagree. Mother claims that she rebutted the presumption because (i) spanking was permissible parental discipline, (ii) she and Stepfather had never before abused Daughter, (iii) both she and Stepfather completed a group parenting class, and (iv) DHS had already closed the CWS Case by the time that the Family Court considered Father's Motion for Post-Decree Relief.

In order to rebut the HRS § 571-46(a)(9) presumption, Mother "had to demonstrate [that] she posed no threat to [the children], and that placing them in her care and custody would not be detrimental to their best interests." *AC v. AC*, 134 Hawai'i 221, 232, 339 P.3d 719, 730 (2014). The Family court determined that Mother had failed to overcome the presumption. As the trier of fact, the Family Court is entitled to deference in its evaluation of the weight and credibility of the evidence. Based on our review of the record, we cannot say that the Family Court erred in determining that Mother failed to rebut the presumption.[9/]

---

[9/] Mother argues that the Family Court abused its discretion in denying her motion for new trial for the same reasons that it abused its

(continued...)

V.    CONCLUSION

For the foregoing reasons, we affirm (1) the September 24, 2013 Order re: Trial/Extended Hearing, and (2) the August 27, 2013 Order Denying Plaintiff's Motion for New Trial Filed July 31, 2013.

DATED:   Honolulu, Hawaiʻi, March 23, 2015.

On the briefs:

Rebecca A. Copeland
(Law Office of Rebecca A.
Copeland LLC)
for Plaintiff-Appellant.

Francis T. O'Brien
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge

---

[9] (...continued)
discretion in granting Father's motion for reconsideration and his Motion for Post-Decree Relief.  Since we find no error with the orders granting the latter two motions, we find no abuse of discretion with regard to the former. Mother is not entitled to a new trial.